T.C. Summary Opinion 2003-96

UNITED STATES TAX COURT

EUGENE J. AND KATHRYN A. SCHUMACHER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18776-02S.                    Filed July 23, 2003.

Paul J. Quast, for petitioners.

Blaine C. Holiday, for respondent.

DINAN, Special Trial Judge: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in

effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes of $20,582 and $21,861 for the taxable years 1998 and 1999, respectively.

The issue for decision is whether petitioner husband's (petitioner's) leasing activity is "insubstantial" in relation to his S corporation business activity, such that petitioners may group the activities for purposes of the section 469 passive activity loss rules pursuant to section 1.469-4(d)(1)(A), Income Tax Regs.[1]

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners resided in Arlington, Minnesota, on the date the petition was filed in this case.

Petitioner is the majority owner of Pro Flight Center, Inc., (PFC), an S corporation which was incorporated in February 1996. After acquiring the assets of the former Stensin Aviation, PFC began its business activity at the Beaver County Airport in Beaver Falls, Pennsylvania, on March 15, 1996. The assets acquired from Stensin Aviation included five airplanes, a fuel

---

[1]Petitioners do not dispute any other adjustments in the statutory notice of deficiency.

truck, a fuel farm, tools, office equipment, parts, fuel, and oil. PFC's principal business activities from the time of its inception have been flight training, aircraft rental, charter services, and aircraft sales. PFC's principal place of business is at the Beaver County Airport.

During the years in issue, petitioner owned 90 percent of the shares of PFC, while Fred A. Neppach owned the remaining 10 percent. During this time, petitioner participated in PFC on a full-time basis as a manager, flight instructor, and mechanic, while also holding the corporate offices of president, treasurer, and assistant secretary. Mr. Neppach served as PFC's general manager, vice president, and secretary. Mr. Neppach, who had received his interest in PFC in exchange for future services, never contributed capital to PFC, and in 2000 he transferred all of his shares to petitioner for no consideration.

Beginning in 1997, petitioner began acquiring additional equipment which he determined was necessary in order to continue the operation of PFC. Petitioner decided to purchase the equipment himself and lease it to PFC because petitioner felt that the company could not have afforded to make the purchases, and because if petitioner had "let the company buy the equipment, he [Mr. Neppach] would automatically have 10 percent of the equipment". Petitioner felt this was undesirable because Mr.

Neppach had no "financial equity" in the corporation at that time.

Petitioner used personal retirement funds and commercial loans to make the equipment purchases. In 1997, petitioner purchased an airplane at a cost of $38,000 in order to lease it to PFC. This plane subsequently was sold in 1998 for $48,000, at a gain of $17,600. In 1998, petitioner purchased two airplanes and two airplane engines for lease to PFC. The cost of the airplanes totaled $279,000, and the cost of the engines totaled $60,000. Written leases were executed between petitioner and PFC under which PFC was responsible for operating and maintenance expenses, including fuel, repairs, insurance, and taxes. Payments required under the leases ranged from $1,000 per month to $2,000 per month per aircraft. PFC made actual lease payments to petitioner of $7,000 in 1997, $9,500 in 1998, and $34,940 in 1999. These payments were significantly less than what was required under the leases; for example, the leases required payments totaling $40,100 in 1998. The equipment leased to PFC was used exclusively by PFC. In addition to the aircraft leased to PFC by petitioner and the five aircraft acquired from Stensin Aviation, PFC leased five more aircraft from other parties.

On PFC's Federal income tax returns for the years in issue, the following income was reported and deductions claimed:

|                          | 1998        | 1999         |
|--------------------------|-------------|--------------|
| Gross receipts           | $120,156    | $1,092,295   |
| Cost of goods sold       | 235,988     | 359,295      |
| Gross profit (loss)      | (115,832)   | 733,000      |
| Other income             | 684,336     | -0-          |
| Total income             | 568,504     | 733,000      |
| Deductions               | 701,594     | 801,676      |
| Income (loss)            | (133,090)   | (68,767)     |

The classification of certain income as "other income" in 1998 rather than "gross receipts", as was done in 1999, was not the result of a change in PFC's operations during those years. The "Balance Sheets per Books" filed with these returns reflected the following year-end asset costs and values:

|                                  | 1998       | 1999       |
|----------------------------------|------------|------------|
| Cost of depreciable assets       | 503,996    | 510,360    |
| Less accumulated depreciation    | (335,532)  | (404,699)  |
| Other assets                     | 250,423    | 233,490    |
| Total assets                     | 418,887    | 339,151    |

PFC has reported operating losses in each year since its inception. Petitioner's share of these losses, as a 90 percent owner, were as follows: $32,789 in 1996, $202,609 in 1997, $119,781 in 1998, and $61,808 in 1999. Because petitioner's adjusted basis in his PFC stock during the years in issue was zero, petitioner was unable to deduct these losses in full. As of the end of 1998, petitioner's suspended loss was $244,179, and as of the end of 1999, petitioner's suspended loss was $275,987.

Petitioners filed joint Federal income tax returns for taxable years 1998 and 1999. With each of these returns, petitioners filed a Schedule C, Profit or Loss From Business, for

petitioner's airplane leasing activity.  On these forms,
petitioners reported the following:

|                            | 1998      | 1999      |
|----------------------------|-----------|-----------|
| Gross receipts             | $9,500    | $34,940   |
| Depreciation expense       | 61,500    | 98,320    |
| Mortgage expense           | 13,471    | 14,521    |
| Legal/professional expense | -0-       | 108       |
| Profit (loss)              | (65,471)  | (78,009)  |

Petitioners also reported that petitioner materially participated
in the leasing activity in each year.

In the statutory notice of deficiency, respondent determined
that petitioner's Schedule C leasing activity was a passive
activity subject to the provisions of section 469.  Respondent
accordingly limited the losses allowable to petitioners with
respect to the activity to the extent of petitioners' passive
income.  This resulted in the disallowance of deductions for
losses of $47,871[2] in 1998 and $78,009 in 1999.

Pursuant to section 469(a), a passive activity loss
generally is not allowed as a deduction for the year in which it
is sustained.  A passive activity loss is defined as the excess
of the aggregate losses from all passive activities for the
taxable year over the aggregate income from all passive
activities for that year.  Sec. 469(d)(1).  Passive activities

---

[2]Although the record is not clear, the disallowed loss in
1998--which is less than the Schedule C loss of $65,471--
apparently reflects the $17,600 gain from the sale of the
airplane which petitioner had purchased to lease to PFC.

generally are those activities which involve the conduct of a trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). Rental activities generally are presumptively passive, without regard to whether the taxpayer materially participates in the activity. Sec. 469(c)(2), (4). Subject to statutory and regulatory exceptions not applicable here, a rental activity is "any activity where payments are principally for the use of tangible property". Sec. 469(j)(8).

Pursuant to the regulations issued under section 469, certain activities may be grouped into a single activity for purposes of ascertaining whether the resulting combined activity is a passive activity under that section. The regulations state the general rule that

> One or more trade or business activities or rental activities may be treated as a single activity if the activities constitute an appropriate economic unit for the measurement of gain or loss for purposes of section 469.

Sec. 1.469-4(c)(1), Income Tax Regs. A taxpayer who is a shareholder of an S corporation may group the activity of that S corporation with an activity conducted directly by the taxpayer. Sec. 1.469-4(d)(5)(i), Income Tax Regs.

Whether activities constitute an "appropriate economic unit" depends upon all the relevant facts and circumstances, giving the greatest weight to (1) similarities and differences in the types of trades or businesses, (2) the extent of common control, (3) the extent of common ownership, (4) geographical location, and

(5) interdependencies between the activities. Sec. 1.469-4(c)(2), Income Tax Regs. Taxpayers may use "any reasonable method of applying the relevant facts and circumstances in grouping activities." Id. However, there are limitations imposed on taxpayers' ability to group certain activities. Sec. 1.469-4(d), Income Tax Regs. The limitation applicable to the case at hand provides:

> (1) Grouping rental activities with other trade or business activities--
>
> > (i) Rule. A rental activity may not be grouped with a trade or business activity unless the activities being grouped together constitute an appropriate economic unit under paragraph (c) of this section and--
> >
> > > (A) The rental activity is insubstantial in relation to the trade or business activity;
> > >
> > > (B) The trade or business activity is insubstantial in relation to the rental activity; or
> > >
> > > (C) Each owner of the trade or business activity has the same proportionate ownership interest in the rental activity, in which case the portion of the rental activity that involves the rental of items of property for use in the trade or business activity may be grouped with the trade or business activity.

Sec. 1.469-4(d)(1), Income Tax Regs. The regulations do not define the term "insubstantial".

The dispute in this case has been narrowly drawn by the parties: The sole issue we must decide is whether the leasing activity is insubstantial in relation to the PFC activity within

the meaning of section 1.469-4(d)(1)(A), Income Tax Regs.  If it is, petitioners may group petitioner's leasing activity with the PFC activity, thereby allowing petitioners to categorize as non-passive, and therefore deduct, the losses incurred by petitioner's leasing activity.  Because respondent does not dispute that the two activities are an appropriate economic unit, we need not address the specific factors enumerated in section 1.469-4(c)(2), Income Tax Regs.

In arguing that the leasing activity was not insubstantial in relation to the PFC activity, respondent makes several comparisons between them, highlighting the income, losses, cost of depreciable assets, and basis of assets in both activities. In arguing that the leasing activity was insubstantial in relation to the PFC activity, petitioners focus both on "quantitative" comparisons similar to those focused on by respondent, as well as on other "qualitative" factors.  See generally Glick v. United States, 96 F. Supp. 2d 850 (S.D. Ind. 2000).

The parties' comparison of the value of the assets of each activity is not determinative under the particular facts of this case.  Merely because the rental activity in this case involved the rental of assets with high values does not make the primary trade or business activity less substantial in relation to that rental activity.  Most importantly, a comparison of the value of

the assets does not take into account the value of equipment that PFC leased from parties other than petitioner but that was instrumental to PFC's operations.

We find that, in ascertaining whether the leasing activity was insubstantial in relation to the PFC activity, the most significant fact in this case is that petitioner created and operated the leasing activity solely for PFC's benefit. In furtherance of this goal, petitioner spent very little time conducting the affairs of the leasing activity in comparison with the very substantial amount of time and effort expended by petitioner in carrying on PFC's business. The leasing activity was intended to, and in fact did, provide a service solely to PFC. Its purpose was to enhance PFC's ability to generate business, maintain PFC's viability as an ongoing concern, and possibly enable PFC to become profitable in the future, not to provide an income stream independently from PFC. Consistent with this purpose, the leasing activity had gross receipts of $9,500 in 1998 and $34,940 in 1999, compared to PFC's gross receipts and other income of $804,492 and $1,092,295 in each respective year.

Based on the record in this case, we find that petitioner's leasing activity was insubstantial in relation to the PFC activity. Accordingly, we do not sustain respondent's determination that the leasing activity was a passive activity subject to the provisions of section 469.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.